## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

DWIGHT A. WATSON,                  )
                                   )
                    Plaintiff,     )
                                   )
vs.                                )        Case No. CIV-07-502-AR
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of the Social         )
Security Administration,           )
                                   )
                    Defendant.     )

## MEMORANDUM OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of the Social Security Administration denying his

applications for disability insurance and supplemental security income benefits.  The parties

have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C.

§ 636(c).  The Commissioner has answered and filed the administrative record (hereinafter

Tr. __).  As the parties have briefed their positions, the matter is at issue.  For the following

reasons, the matter is remanded to the Commissioner for further proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance and supplemental security income

benefits on December 1, 2003, alleging a disability onset date of December 1, 2003, caused

by chronic depression, deep burn scars on his back and legs, carpel tunnel in both hands,

arthritis, hypertension, and dizziness.  Tr. 51-53, 63, 537-39, 612.  The applications were

denied on initial consideration and on reconsideration at the administrative level.  Tr. 28, 29,

31-33, 35-37, 540, 541-43, 544, 545-46.  Pursuant to Plaintiff's request, a hearing was held

before an administrative law judge on January 9, 2006.  Tr. 609-646.  Plaintiff appeared in

person with his attorney, and offered testimony in support of his applications.  Tr. 611, 612-

40.  A vocational expert also testified at the request of the administrative law judge.  Tr. 39-

40, 640-46.  The administrative law judge issued her decision on March 15, 2006, finding

that Plaintiff was not disabled within the meaning of the Social Security Act, and thus he was

not entitled to benefits.  Tr. 14-16, 17-27.  The Appeals Council denied Plaintiff's request

for review on February 26, 2007, and therefore the decision of the administrative law judge

became the final decision of the Commissioner. Tr. 6-8.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review

as follows:

> We review the agency's decision to determine whether the factual findings are
> supported by substantial evidence in the record and whether the correct legal
> standards were applied. Substantial evidence is such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion.  However,
> a decision is not based on substantial evidence if it is overwhelmed by other
> evidence in the record or if there is a mere scintilla of evidence supporting it.
> The agency's failure to apply correct legal standards, or show us it has done
> so, is also grounds for reversal.  Finally, because our review is based on the
> record taken as a whole, we will meticulously examine the record in order to
> determine if the evidence supporting the agency's decision is substantial,
> taking into account whatever in the record fairly detracts from its weight.
> However, we may neither reweigh the evidence nor substitute our discretion
> for that of the Commissioner.

Hamlin v. Barnhart,  365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations

omitted).   To determine whether a claimant is disabled, the Commissioner employs a

five-step sequential evaluation process.  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.

1988).  The claimant bears the burden to establish a prima facie case of disability at steps one

through four.  Id. at 751 & n.2.  If the claimant successfully carries this burden, the burden

shifts to the Commissioner at step five to show that the claimant retains sufficient residual

functional capacity to perform work in the national economy given the claimant's age,

education, and work experience.  Id. at 751.

## III.  THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge  followed

the sequential evaluation process set forth in 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

Tr. 19.  She first found that Plaintiff had not engaged in substantial gainful activity since

August 25, 2004.[1] Tr. 19, 25.  At steps two and three, the administrative law judge found that

Plaintiff suffers from a history of burn injury to the back area, major depressive disorder,

antisocial personality disorder, and substance abuse, and found that these impairments were

severe, but not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part

404, Appendix 1, Subpart P, Social Security Regulations, No. 4.  Tr. 19-20, 25. The

administrative law judge next found that Plaintiff has the physical residual functional

capacity to lift/carry 20 pounds occasionally, and can walk/stand or sit for six hours in an

eight-hour day. Tr. 22, 25.  She further concluded Plaintiff's substance abuse problem limits

---

[1] The administrative law judge stated that Plaintiff amended his disability onset date to August 25, 2004, but Plaintiff states that he has been unable to locate any documentation in the administrative record to support that statement. Tr. 19, Plaintiff's Opening Brief, p. 4, n. 2.  The Court agrees.  While Plaintiff amended his alleged disability onset date to December 1, 2003, (Tr. 612), there is no record of any amendment to the August 25 date.

3

him to unskilled work and would cause him to be inattentive and miss work more than occasionally, and that he should only have interpersonal contact that is incidental to the work performed.  Tr. 22, 25.  Based on this residual functional capacity, the administrative law judge found at step four of the sequential evaluation process that Plaintiff was not able to perform his past relevant work.  Tr. 22, 25.  Considering Plaintiff's age, education, experience and using Medical-Vocational Guideline Rule 202.13 as a guideline, the administrative law judge determined Plaintiff is disabled.  Tr. 23, 26.

However, the administrative law judge also concluded that medical evidence of drug and alcohol abuse were present.  Tr. 23, 26.  Discounting the effects of drug and alcohol abuse on Plaintiff's residual functional capacity, the administrative law judge still concluded Plaintiff could not perform his past relevant work.  Tr. 24, 26.  Thus, again considering Plaintiff's age, education, work experience, Grid Rule 202.13, and the testimony of the vocational expert, along with Plaintiff's residual functional capacity without the effects of drug and alcohol abuse, the administrative law judge concluded Plaintiff would not be disabled.  Tr. 25, 26.  Accordingly, the administrative law judge found drug and alcohol abuse were a contributing factor material to the determination of disability, and denied both of Plaintiff's applications.  Tr. 24, 26-27.

## IV.  PLAINTIFF'S ARGUMENTS ON APPEAL

Plaintiff raises three issues for judicial review. He first claims that the administrative law judge erred by failing to consider his borderline age status when choosing which grid rule to apply. Plaintiff's Opening Brief, p. 16. Second, Plaintiff alleges that the administrative law judge's finding that drug and alcohol abuse was a material factor contributing to his disability is not supported by substantial evidence. Id. at 20. Finally, as his third point of error, Plaintiff contends the administrative law judge's residual functional capacity assessment is not supported by substantial evidence. Id. at 25.

**V. DISCUSSION**

The Court will limit the discussion to the second of the three issues raised by Plaintiff - the administrative law judge's finding that drug and alcohol addiction was material to the disability determination - as that issue is dispositive of the appeal. In connection with his second point of error, Plaintiff argues the administrative law judge's finding that drug and alcohol addiction was material to his disability is not supported by substantial evidence, and that she applied the wrong legal standard in so concluding. Plaintiff's Opening Brief, p. 20; Reply, p. 3. In particular, Plaintiff claims the administrative law judge did not cite any medical report, opinion, or projection, or obtain medical expert testimony, to establish what his limitations would have been if he was not using drugs and alcohol. Thus, Plaintiff maintains, her conclusion that drug and alcohol addiction was material to Plaintiff's disability does not rest upon substantial evidence. Plaintiff's Opening Brief, pp. 23-24. Additionally, Plaintiff submitted records to the Appeals Council which were generated after the administrative hearing and he contends these demonstrate he suffered vocationally significant

effects from his mental impairments even when he was sober.  Id. at 24.  Accordingly, he contends these records undermine the administrative law judge's conclusion that he would be able to work if he refrained from using drugs and alcohol.  Id. at 24-25.

In response, the Commissioner argues that the administrative law judge applied correct legal standards and that her findings are supported by substantial evidence.  Response Brief, p. 7.  The Commissioner points to a specific record from September 27, 2005, that the administrative law judge discussed at the hearing, and contends this record constitutes substantial evidence supporting the administrative law judge's determination that Plaintiff's drug and alcohol addiction was material to his disability.  Id. at 9.  Further, the Commissioner responds that expert testimony concerning the effects of Plaintiff's drug and alcohol addiction was not necessary because the record contained evidence that Plaintiff was able to work if he refrained from abusing drugs and alcohol.  Id.  Lastly, the Commissioner argues that the evidence submitted to the Appeals Council demonstrates Plaintiff functioned well when he abstained from drugs and alcohol, and thus also supports the administrative law judge's determination.  Id. at 10.

Plaintiff's reply brief argues that the Commissioner's characterization of the evidence submitted to the Appeals Council is distorted.  Reply, p. 4.  Plaintiff explains that the Commissioner's response brief extracts only portions of the medical record to support the Commissioner's argument, while ignoring the fact that the evidence actually shows that Plaintiff suffered vocationally relevant effects from his mental impairments while he was sober.  Id. at 5.  Thus, Plaintiff concludes, the Commissioner failed to meet his burden to

6

obtain a medical opinion regarding how Plaintiff would have been able to function in a work setting absent drug and alcohol abuse.  Id.

The Contract with America Advancement Act of 1996 provides that "[a]n individual shall not be considered to be disabled [under either Title II or XVI of the Social Security Act] . . . if alcoholism or drug addiction would (but for this paragraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); accord 20 C.F.R. §§ 404.1535, 416.935.  If an administrative law judge finds that the claimant is disabled and has medical evidence of the claimant's drug addiction or alcoholism, the administrative law judge "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535, 416.935.  The "key factor" in making this determination is whether the claimant would still be found disabled if he stopped using drugs or alcohol.  20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

A two-step analysis is required to determine whether drug addiction or alcoholism is a contributing factor material to a determination of disability. First, the administrative law judge must determine which of the claimant's physical and mental limitations would remain if the claimant refrained from drug or alcohol use.  Then, the administrative law judge must determine whether the claimant's remaining limitations would be disabling.  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the claimant's remaining limitations would not be disabling, the claimant's alcoholism or drug addiction is a contributing factor material to a determination of disability and benefits will be denied.  See 20 C.F.R. §§ 404.1535(b)(2)(i),

416.935(b)(2)(i).  If the claimant would still be considered disabled due to his or her remaining limitations, the claimant's alcoholism or drug addiction is not a contributing factor material to a determination of disability and the claimant is entitled to benefits.  See 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

The medical evidence submitted to the administrative law judge showed Plaintiff attempted suicide in July 2001 by overdosing on prescription medications.  Tr. 148-50, 169.  During the attempt, he lost consciousness and sustained burns to his upper back, left lower leg, head, and left heel from a heating pad.  Tr. 178.  For the next three months, Plaintiff received inpatient psychiatric care pursuant to an order for emergency detention and court order of commitment.  Tr. 175.  At the time of his discharge on October 11, 2001, Plaintiff was diagnosed with recurrent major depression, alcohol dependence in remission secondary to controlled environment, polysubstance abuse, antisocial personality disorder/traits, and a GAF[2] of 70.  Tr. 173, 177.  The psychiatrist who drafted Plaintiff's discharge summary gave Plaintiff a poor prognosis and feared he may relapse with substance abuse without strong support in the community.  Tr. 177.

After being discharged, Plaintiff began receiving mental health stabilization treatment from Red Rock Behavioral Health Services.  Tr. 326, 334-35.  His treatment plan included monthly individual therapy and bi-weekly services from the medication clinic.  Tr. 305.  On

---

[2] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning."  Langley v. Barnhart, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) (citation and quotation omitted).

November 12, 2001, a staff physician noted Plaintiff appeared improved on his current treatment regimen, was sleeping better, and that his general mood was optimistic.  Tr. 324. However, approximately two weeks later, on November 24, 2001, Plaintiff was admitted to the University of Oklahoma Medical Center for treatment of a closed head injury and a substance abuse withdrawal seizure.  Tr. 193.  In December, 2001, a Red Rock physician noted Plaintiff smelled of alcohol and was continuing to abuse Xanax, but that he was trying to taper himself off it.  Tr. 323.  This physician also discussed with Plaintiff the possibility of entering a day treatment program, but Plaintiff indicated he was unable to afford any such program.  Tr. 323.

In January 2002, Plaintiff's Red Rock physician noted that he was beginning to do better on his current regimen, was attending Alcoholics Anonymous meetings and had not had anything to drink in three weeks, but that he was still taking several Xanax per day.  Tr. 320.  However, in February and March 2002, Plaintiff had returned to drinking, continued abusing Xanax, and was noted to remain mildly and chronically depressed.  Tr. 319.   In April 2002, Plaintiff reported he felt stable, Tr. 318, and he was discharged from the program in June 2002 because of his reported stability.  Tr. 292.  Plaintiff's GAF score at the time he entered the program was 45 and was assessed at 49 at the time of his discharge.[3]  Tr. 291. There are few other mental health records covering 2002.  It does appear though that Plaintiff sought and received medication for his "nerves," depression, and difficulty sleeping in late

---

[3] A GAF score of 41-50 indicates "serious symptoms. . . [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  Langley, 373 F.3d at 1123 n.3.

2002 and early 2003, Tr. 203-205, and that he attempted suicide in July 2002 by drinking insecticide. Tr. 288-89.

In April 2003, a non-examining psychologist prepared a Mental Residual Functional Capacity Assessment form finding Plaintiff had moderately limited ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, but no other significant limitations. Tr. 213-214. Citing no records in support, the reviewing physician concluded Plaintiff can perform simple and some more complex tasks, interact with others and the public on a superficial level, and that his adaptive functions are intact. Tr. 215. On a Psychiatric Review Technique form completed the same day, the same reviewing psychologist opined Plaintiff had moderate difficulties in maintaining concentration, persistence or pace, and no restrictions of activities of daily living or difficulties in maintaining social functioning, but that he did have one or two episodes of decompensation of extended duration. Tr. 227.

Apparently, Plaintiff spent the summer of 2003 in jail because he did not pay a fine related to a criminal charge. Tr. 288, 316, 328. On September 9, 2003, Plaintiff requested mental health treatment from Red Rock due to suicidal ideation, depression, extreme nervousness, and anxiety. Tr. 287-90, 316, 328. At the time, Plaintiff reported that he had not had anything to drink in slightly over one month, and had not smoked marijuana since July 2002. Tr. 316, 328, 331. Plaintiff's GAF score at the time, and for the past year, was estimated to be 45. Tr. 337. Plaintiff also sought medication from another provider two days later for high anxiety levels and an inability to relax or sleep. Tr. 237. Plaintiff met with a

counselor at Red Rock on September 24, 2003, where he denied suicidal ideation, but it was noted that he looked anxious.  Tr. 315.

Plaintiff was admitted to Unity Health Center on September 27, 2003, for suicidal ideation and abdominal bleeding.  Tr. 465-66.  He was discharged the following day and instructed to follow up with Red Rock for mental health help.  Tr. 432.  During this hospital visit, Plaintiff admitted drinking up to a case of beer per week and was discouraged from continuing to do so.  Tr. 432.  A few days later, Plaintiff again was brought to Unity Health Center on October 3, 2003, with suicidal ideation and feelings of anxiousness.  Tr. 490, 494. Plaintiff was discharged the same day to the custody of the Shawnee Police Department.  Tr. 492.

On October 23, 2003, a progress note notation was made that indicated Plaintiff was diagnosed at Griffith Memorial Hospital with an alcohol-induced mood disorder. Plaintiff was noted to be continuing to complain of depression and anxiety, and requesting Xanax. Tr. 314.  Plaintiff resumed counseling on November 6, 2003, and indicated he had not had anything to drink in the past 30 days, but was occasionally smoking marijuana.  He continued to have suicidal ideation, and to be anxious and depressed.  Tr. 315.  Plaintiff appears to have abstained from drinking for much of November and December 2003, but he continued to smoke marijuana to help him "forget" and "calm down."  Tr. 313.  During this time period, Plaintiff was stable on his medication.  Tr. 308-309.

On January 12, 2004, Plaintiff's mood was positive and he appeared happy.  He continued to maintain alcohol sobriety but admitted to smoking marijuana occasionally.  Tr.

312.  On January 20, 2004, a non-examining psychologist completed a Mental Residual Functional Capacity Assessment form.  It was noted that Plaintiff had moderately limited ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the public, but no other significant limitations.  Tr. 266-67.  The same psychologist also completed a Psychiatric Review Technique form at the time and assessed no restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and one or two episodes of decompensation of extended duration.  Tr. 279.  One week later, Plaintiff's counselor at Red Rock noted Plaintiff's mood was depressed and they discussed his continued use of marijuana, including Plaintiff's reported use of the drug to relieve pain, achieve numbness, and for "feeling like a rebel."  Tr. 312.

Although Plaintiff relapsed into using alcohol in February, throughout February into April, he remained stable on his medications. Tr. 286, 301, 306-308. He was noted to lack concrete coping skills associated with management of his depressive symptoms, and to not be faring well with managing his depression or relapse prevention skills.  Tr. 284, 286.  On April 12, 2004, Plaintiff appeared for his counseling appointment at Red Rock, but abruptly left when he was asked to complete some paperwork. Tr. 283.  Apparently, Plaintiff did not resume treatment with Red Rock until he returned in September 2004 following a hospitalization.  Tr. 377-79.

In June 2004, a non-examining psychiatrist completed another Mental Residual Functional Capacity Assessment form and Psychiatric Review Technique form, and reached

essentially the same conclusions as the examiner who filled out these forms in January 2004. Tr. 341-57.  Subsequently, on August 25, 2004, Plaintiff was involuntarily committed to Unity Health Center following a "psychotic" episode where he experienced visual and auditory hallucinations.  Tr. 417, 426-29.  A drug test performed the day of Plaintiff's admission revealed positive results for both benzodiazepine and marijuana, but no alcohol. Tr. 423.  Plaintiff was discharged to the Shawnee Police Department.  Tr. 425.  Plaintiff attributed this incident to a combination of marijuana and Ativan abuse, physical illness, and not taking his medications as prescribed.  Tr. 375.

In September 2004, Plaintiff resumed treatment at Red Rock and was diagnosed with bipolar disorder, alcohol and marijuana dependence, and with a current GAF and highest for the past year of 45.  Tr. 393.  Plaintiff participated in group therapy and visited with a physician for approximately one month at Red Rock, but then stopped attending.  Tr. 365-76, 384-89.

Plaintiff recommenced therapy at Red Rock in January 2005, was depressed, had run out of most of his medications, and was continuing to use marijuana when he returned.  Tr. 383, 392.  Plaintiff reported depression, anxiety, a sleep disturbance,  antisocial behaviors, an episode of hypomania, and some exhibitionist tendencies.  Tr. 381-82.  Plaintiff's drug and alcohol abuse decreased during this time frame, and he reported feeling less depressed. Tr. 359-61.  However, in June 2005, Plaintiff felt anxious, and relapsed with using alcohol and dealing and using marijuana.  Tr. 507, 526. He appeared confused during individual therapy, felt "agitated," and attributed his deteriorating mood to excessive drinking. Tr. 526.

13

He also fractured two ribs in a fall in June 2005, and was prescribed medication for pain.  Tr. 411, 414.

About one month after he broke his ribs, Plaintiff fractured his foot and was prescribed medication for pain.  Tr. 405.  The next time Plaintiff appeared for therapy in July 2005, he was continuing to use marijuana, but was not drinking, and seemed more stable and less confused.  Tr. 524.  However, he did continue to have difficulties with sleep and his sleep medications.  Tr. 505-506.  Plaintiff did not attend group therapy during August but his psychiatrist noted that Plaintiff reported increased sleep disturbances and anxiety.  Tr. 503.

An assessment performed September 2, 2005, listed Plaintiff's diagnoses as major depressive disorder without psychotic features, alcohol dependence, antisocial personality disorder, and a current GAF score of 45.  Tr. 509.  His physician noted he was stable on his medications on September 27, 2005.  Tr. 502.  Plaintiff attended a group therapy session in October 2005 where he reported he was maintaining sobriety, but left his scheduled psychiatric appointment early without receiving treatment.  Tr. 501, 520-21.  Plaintiff testified this was because he suffered a panic attack.  Tr. 635.  In November 2005, Plaintiff reported in group therapy that he was not using drugs or alcohol, and his medications were adjusted.  Tr. 500, 518-19.

The administrative hearing was held January 9, 2006.  Tr. 611.  At the hearing Plaintiff initially testified that he had been completely sober since September 2004 after his release from the hospitalization occasioned by his psychotic episode in August 2004.  Tr.

14

622, 628.  However, the administrative law judge correctly noted that Plaintiff's medical records indicated he had been at least occasionally drinking and smoking marijuana after September 2004, (Tr. 630), so Plaintiff was asked to clarify his earlier testimony concerning the duration of his sobriety.  Tr. 637-38.  In response, Plaintiff admitted he still occasionally drinks and smokes marijuana, but denied that he did so as frequently as his Red Rock medical records indicate.  Tr. 639.  Plaintiff further testified that he believes he would be unable to work even if he did not use alcohol and marijuana.  Tr. 632-33.

In her decision, the administrative law judge initially concluded Plaintiff was disabled. Tr. 23.  Finding the existence of medical evidence of substance abuse, the administrative law judge went on to consider whether Plaintiff's drug and alcohol addiction was "material" to her determination that Plaintiff is disabled.  Tr. 23.  The administrative law judge concluded that Plaintiff's residual functional capacity would be slightly less restrictive if the effects of drugs and alcohol abuse were discounted by implicitly finding that he would not be inattentive and would not miss work more than occasionally if he refrained from using drugs and alcohol.  Compare Tr. 22, with Tr. 24.  Nevertheless, she still found he would not be able to perform his past relevant work.  Tr. 24.  Based upon the vocational expert's testimony identifying work Plaintiff could perform if the effects of his drug and alcohol addiction were discounted, the administrative law judge concluded Plaintiff could perform work that exists in significant numbers.  Tr. 24.  Thus, she concluded Plaintiff's drug and alcohol addiction was material to the determination that Plaintiff is disabled, and she denied benefits.  Tr. 24-25.

As Plaintiff argues, the administrative law judge did not point to any specific report or conclusion from Plaintiff's healthcare providers in support of her determination that cessation of drug and alcohol use would ultimately render him able to work.  Without citation to any specific piece of evidence, the administrative law judge stated "[t]he records are replete with evidence that at the times [Plaintiff] did decrease his use of alcohol and marijuana, he had a decrease in depression."  Tr. 21.  She continued on, noting "[s]ubstance abuse has been apparent in connection with all of [Plaintiff's] inpatient treatments."  Tr. 21.  She further observed that Plaintiff's healthcare providers have discussed with him the negative effects of drinking and using marijuana, and that he has acknowledged them and that substance abuse may exacerbate his mental health problems.  Tr. 22.  The administrative law judge discussed an individual therapy note made by a social worker which concluded that marijuana use "probably" aggravates Plaintiff's depression, and a September 2, 2005, treating note showing Plaintiff reported that his depression improved during a time period in which he had not used alcohol and was taking his medications. Tr. 22.

Specifically in connection with determining Plaintiff's drug and alcohol addiction was material to the finding he was disabled, the administrative law judge remarked Plaintiff's drug and alcohol abuse "has been present for many years and continues to the present."  Tr. 23.  Again, without relying on any particular record, she opined: "[t]he claimant's maladaptive pattern of [drug and alcohol] abuse has led to clinically significant impairments or distress.  The claimant himself has admitted that when he drinks and uses marijuana, his depression is worse, and the medical record notes improvement in symptomology during

16

periods of abstinence from [drugs and alcohol]." Tr. 23. Assuming for the moment that these statements are an entirely accurate recitation and interpretation of the information contained in Plaintiff's medical records, this evidence is insufficient to support the administrative law judge's conclusion that Plaintiff's drug and alcohol abuse was material to the finding he is disabled.

In Salazar v. Barnhart, 468 F.3d 615, 623 (10th Cir. 2006) the Tenth Circuit Court of Appeals discussed the analytical process an administrative law judge must go through prior to concluding that drug and alcohol addiction is material to the conclusion a claimant is disabled. The opinion focused upon a teletype issued by the Commissioner pertaining to "situations where a claimant has one or more other mental impairments in addition to [drug and alcohol addiction]." Id. The Court of Appeals noted that the teletype "stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the [drug and alcohol addiction] is *not* a contributing factor material to the disability determination." Id. (emphasis in original). The teletype also emphasized:

> The most useful evidence that might be obtained in [cases of multiple mental impairments combined with drug and alcohol addiction] is that relating to a period when the individual was not using drugs/alcohol. Of course, when evaluating this type of evidence, consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence.

Id. As the Court of Appeals also observed, the teletype further indicated that the report of a medical or psychological consultant could be the basis for a conclusion that drug and

alcohol are material to the determination that a claimant is disabled if the consultant is able
to separate the effects of mental impairments from those of substance abuse and project what
limitations would remain if the claimant stopped using drugs or alcohol.  Id. at 623-24.
Significantly,

> the Commissioner's teletype instructs that where the record is devoid of any
> medical or psychological report, opinion, or projection as to the claimant's
> remaining limitations if she stopped using drugs or alcohol, an [administrative
> law judge should "find that [drug and alcohol addiction] is not a contributing
> factor material to the determination of disability."

Id. at 624.

Using the teletype for guidance in determining whether substantial evidence
supported the administrative law judge's determination that drug and alcohol addiction was
material to the determination that a disability existed, the Salazar Court concluded that the
decision was not so supported.  The Court surmised that the administrative law judge's
conclusion that the claimant's impairments improved after a period of sobriety was based
upon a mistaken reading of the evidence.  The Court also held that "anecdotal comments"
and a "single statement" from the claimant's treating physicians did not amount to
substantial evidence upon which a finding that drug and alcohol addiction was material
could be based.  Id. at 624-25.  In the Court's opinion, the treating physician statements
upon which the administrative law judge relied did not amount to substantial evidence
because, "neither physician ever assessed whether [the plaintiff's] mental disorders were
disabling in the absence of her [drug and alcohol addiction], and neither assessed her

18

abilities in an independent work environment as required by the Commissioner's teletype." Id. at 625.

The decision at issue here suffers from the same deficiencies as the decision at issue in Salazar. Specifically, the record is devoid of opinions or projections as to what Plaintiff's remaining limitations would be if the effects of his drug and alcohol addiction are discounted. The majority of the medical records pertaining to Plaintiff's mental illness were generated during his treatment at Red Rock, which consisted of individual and group therapy along with medical clinic appointments with a psychiatrist. These records document observations about Plaintiff's appearance, mood, behavior, and so forth, adjustments to his medication, and discussions between Plaintiff and his therapist and psychiatrist, but they do not contain any information pertaining to Plaintiff's ability to work. For example, the Commissioner's brief discusses an individual therapy progress note from January 4, 2005. This record documents the problems addressed during the therapy session, the activities/methods employed, Plaintiff's response, and progress towards goals/objectives. In the progress towards goals/objectives portion of this particular note, Plaintiff's therapist, a licensed clinical social worker, noted that Plaintiff had been off his medication, was more depressed than he was one year ago, and continued to use marijuana which, in the therapist's opinion "probably is aggravating his depression." Tr. 392. The following September, another social worker completed a diagnostic form where he opined that a "functional impact" of Plaintiff's drug and alcohol use was that Plaintiff's depression "is most likely being aggravated by his [marijuana] use." Tr. 511. While these records certainly show

Plaintiff's therapists' speculation that marijuana use may have aggravated his depression, they do not contain any objective information concerning the impact of Plaintiff's drug and alcohol abuse on his vocational abilities, and certainly nothing about his projected abilities if his drug and alcohol use ceased.  See Tr. 392, 511.

The Commissioner argues that the administrative law judge cited a September 27, 2005, medical report as support for her conclusions regarding Plaintiff's mental limitations in the absence of drug and alcohol abuse, and that this record is substantial evidence supporting the finding that Plaintiff would not be disabled absent drug and alcohol abuse. Brief, p. 8, 9 n.2.  This record is a Red Rock physician's progress note dated September 27, 2005, wherein Plaintiff's physician recorded several assessments made during the visit by checking boxes on the form.  In particular, Plaintiff reported compliance with his prescribed medications, experienced no side effects, reported no suicidal or homicidal ideation, and involuntary movements were not observed.  Tr. 502.  Additionally, the physician checked boxes noting Plaintiff's physical appearance was neat/clean and appropriate, his speech was normal, his mood was normal, his affect was appropriate and constricted, his thoughts were intact and he was oriented, no delusions or hallucinations were present, his sleep was normal, and his interaction was cooperative.  Tr. 502.  Handwritten notes at the bottom of the form are largely illegible, but do say Plaintiff is "stable on current regime[.]" Tr. 502.

While this note certainly supports an argument that, at times, Plaintiff's mental impairments appeared to result in few functional limitations, to claim that this record is substantial evidence that Plaintiff would not be disabled absent his drug and alcohol

addiction stretches its significance too far.  See Salazar, 468 F.3d at 625.  The note contains no objective assessment or opinion concerning Plaintiff's mental abilities to perform basic work activities such as understanding, carrying out, and remembering simple instructions, using judgment, responding appropriately to supervision, co-workers and usual work situations, or dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521(b); 416.921(b).  Indeed, only a few weeks prior, Plaintiff's GAF score was assessed at 45, Tr. 509, which suggests "serious symptoms. . . [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  Langley, 373 F.3d at 1123 n.3.

Moreover, a thorough and careful review of the entire medical file reveals no reports or evidence describing what Plaintiff's remaining limitations would be if he ceased drug and alcohol use.  No one has rendered an opinion assessing whether Plaintiff's mental disorders are disabling in the absence of drug and alcohol abuse, and no one appears to have given an opinion concerning Plaintiff's abilities in a regular work environment.  Under such circumstances, where the record contains no evidence of the claimant's remaining limitations if drug and alcohol use ceased, "an [administrative law judge should find that [drug and alcohol addiction] is not a contributing factor material to the determination of disability."  Salazar, 468 F.3d at 624 (quotations omitted).  Thus, the absence of such evidence here compels the conclusion that the administrative law judge's finding that Plaintiff's drug and alcohol addiction was material to the determination that he is disabled is not supported by substantial evidence.

Furthermore, the administrative law judge's determination that Plaintiff would be able to work if he ceased drug and alcohol use hinged on Plaintiff's frequent absenteeism and inattentiveness secondary to his drug and alcohol abuse, but there are no reports, evidence, or projections in the administrative record that pertain to qualities affecting Plaintiff's attentiveness and ability to attend work regularly if he no longer used drugs and alcohol. All of the Residual Functional Capacity (Mental) forms and Psychiatric Review Technique forms were completed in 2003 and 2004 - a time period during which Plaintiff, by his own testimony and medical records, was still using drugs and alcohol which prevents any of these assessments from providing a basis upon which the administrative law judge could determine what limitations Plaintiff would have if he stopped using drugs and alcohol. As it existed before the administrative law judge, the record did not provide enough evidence to conclude that Plaintiff's drug and alcohol addiction was material to the disability determination.

Since the case will be remanded for further proceedings, the Court declines to comment on the significance of the evidence submitted to the Appeals Council after the administrative law judge issued her decision. Further, because Plaintiff's arguments concerning the administrative law judge's handling of the drug and alcohol addiction issue necessitate a remand, the Court will not consider Plaintiff's other arguments as a discussion of them might affect the administrative law judge's treatment of this case on remand. See Watkins v. Barnhart, 350 F.3d 1297, 1299 ( 10th Cir. 2003).

The Court notes that this remand only involves Plaintiff's claim for supplemental security income benefits as the Plaintiff does not challenge the determination by the administrative law judge that Plaintiff last met the insured status requirements for disability benefits through June 30, 1999, and he does not allege he was disabled until December 1, 2003.  (Tr. 17-18, 612).

## CONCLUSION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the Court finds that the decision of the Commissioner of the Social Security is not supported by substantial evidence.  Accordingly, the matter is hereby remanded for further proceedings consistent with this opinion.

**DATED this 30th day of May, 2008.**


_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE